IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENNIE K. K.,[1] <br><br> **Plaintiff,** <br><br> v. <br><br> **COMISSIONER of SOCIAL SECURITY,** <br><br> **Defendant.** | Case No. 21-CV-01188-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Title XVI Supplemental Security Income.

## PROCEDURAL HISTORY

Plaintiff applied for disability insurance on April 4, 2019, alleging disability beginning February 15, 2008. (Tr. 69.) After holding an evidentiary hearing, the Administrative Law Judge (ALJ) denied the application. (Tr. 22-32.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following points:

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

Page 1 of 11

1. The ALJ erred when she discussed the evidence supporting her ultimate conclusion and ignored the evidence that undermined it.

2. The ALJ erred when she ignored additional restrictions in her residual functional capacity (RFC) determination related to Plaintiff's migraines.

## APPLICABLE LEGAL STANDARDS

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps 1–4. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. She determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. (Tr. 24.) The ALJ found that plaintiff had severe

impairments of migraines, degenerative disc disease of the lumbar spine status post fusion, posttraumatic stress disorder, anxiety, and depression. (*Id*.)

The ALJ determined Plaintiff had the RFC to perform sedentary work, but limited to no climbing of ladders, ropes, or scaffolds; occasional climbing ramps or stairs, and occasional balancing, stooping, kneeling, crouching, or crawling. (Tr. 26.) The ALJ also limited Plaintiff to occasional exposure to very loud noise, unprotected heights, dangerous heavy moving machinery, and vibrations. (*Id*.) The ALJ additionally noted that Plaintiff can understand, remember, and carry out simple, routine instructions. (*Id*.) Based on the testimony of the vocational expert, the ALJ concluded that Plaintiff was unable to do her past relevant work, while also making an alternative finding that she was able to do other jobs at the sedentary exertional level which exist in significant numbers in the national economy. (Tr. 30-31.)

In drawing his conclusion, the ALJ pointed to several parts of Plaintiff's medical records showing that the medical evidence of record is not supportive of the claimant's allegations of disabling symptomatology. The ALJ stated that "[w]hile the claimant's condition did worsen to the extent that it required surgical intervention in June 2020, treatment notes only first noted her to report worsening back pain in February 2020." (Tr. 29.) The ALJ continued, asserting that "subsequent to the surgery, physical examinations from the claimant's emergency room visitations showed only tenderness of the lumbar spine, without issues with gait, lower extremity strength, or range of motion." (*Id*.)

The ALJ also determined that Plaintiff's "history of migraines would restrict her ability to work in environments that could exacerbate symptoms" and her

Page 4 of 11

"posttraumatic stress disorder, depression, and anxiety would limit the complexity of tasks she could complete." (Tr. 30.)

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The Court will, however, note some key findings.

### I. Agency Records

Plaintiff was born on January 16, 1974 and has a high school education. (Tr. 71.) In her function report, Plaintiff stated that she was unable to stand, sit, lay, walk, or bend over. (Tr. 295.) She also alleged that she had depression due to anxiety and back problems and struggled handling stress due to that anxiety. (Tr. 301.)

### II. Medical Records

Following an earlier diagnosis of degenerative disc disease of the lumbar vertebrae and sciatica, in February 2019, Plaintiff fell on ice and went to an appointment with a pain management doctor. (Tr. 383, 412-413.) The progress notes indicated her subjective complaint of chronic back pain and stated that the current episode started a month earlier. (Tr. 384.) She was prescribed meloxicam for the lytic lesions in her sacrum revealed on her x-ray and instructed to call back if the symptoms failed to improve. (*Id.*)

She was seen again for back pain in March, April, and June 2019, with progress notes showing a diagnosis of degenerative disc disease of the lumbar vertebrae. (Tr. 385-386, 388.) During this time, she was prescribed Tylenol 4 acetaminophen-codeine tablets. The progress note from April described gradual improvement and the June

note stated that the problem had been unchanged. (Tr. 386, 388.) A July 2019 progress note also showed a lack of change in condition and described pain in the lumbar spine. (Tr. 408.) An MRI was ordered, which showed chronic midline low back pain with bilateral sciatica. (Tr. 432.)

In November 2019, Plaintiff received a lumbar epidural to treat her back pain. (Tr. 448.) In January 2020, she received a pain fluoroscopy which revealed a diagnosis of lumbosacral spondylosis without myelopathy. (Tr. 505). A lumbar medial branch nerve block was administered, which provided good relief of her low back pain. (Tr. 461, 463, 644.) In February 2020, she went to the emergency room for low back pain that persisted for three days. (Tr. 629-630.) An x-ray revealed degenerative changes to the lumbar spine. (Tr. 634.) Another lumbar medial branch nerve block was administered later in February 2020. (Tr. 645.)

In June 2020, Plaintiff received a CT scan, which revealed multilevel and degenerative disc disease most pronounced at the L5-S1 level with superimposed mild facet arthropathy and multilevel disc bulges. (Tr. 652.) Later that month, Plaintiff saw a neurosurgeon, who noted that Plaintiff exhausted all nonoperative treatment efforts and described antalgic gait with poor stride distance. (Tr. 655, 657.) The neurosurgeon performed an anterior lumbar interbody fusion of the L5-S1 vertebrae. (Tr. 660, 663.) Plaintiff visited the emergency room on two occasions following surgery in July 2020 complaining of back pain. (Tr. 688, 695.) In one instance, staff noted a normal gait. (Tr. 691.) In the other instance, staff noted a steady gait. (Tr. 700.)

Starting in June 2018, Plaintiff also had a history of diagnosed migraines generally noted as intractable. (Tr. 705, 708.) She reported migraine symptoms

including hearing loss, phonophobia, and photophobia. (Tr. 709.) Regarding the effects of her migraines on employment, Plaintiff stated that her employer did not continue her employment after noticing the way she was affected by a severe migraine. (Tr. 390.) As one progress note described, "[t]his is a recurrent problem. The current episode started more than 1 year ago. The problem occurs intermittently. The problem has been waxing and waning. The quality of the pain is described as aching. The pain is at a severity of 5/10." (Tr. 709.) Plaintiff was prescribed Fioricet for her migraines from 2018 through 2020. (Tr. 710.) In late 2019, she was additionally prescribed Topamax. (Tr. 929.)

Along with migraines, Plaintiff was diagnosed with anxiety, post-traumatic stress disorder, and unspecified depressive disorder. (Tr. 391, 654, 879.) Plaintiff's neighbor raped her at age seven and her testimony in court retraumatized her. (Tr. 888-889.) Plaintiff was noted as easily triggered by words or scenes that remind her of the rape, avoided places that remind her of the rape, and had nightmares related to it. (*Id.*)

### III. State Agency RFC Assessments

In September 2019, state agency physician Dr. Vidya Madala assessed plaintiff's physical RFC based on a review of the medical records. (Tr. 74-76.) She opined that Plaintiff was not disabled. She found that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours, and sit 6 hours, in an 8-hour workday. Another state agency consultant, Dr. Donna Hudspeth, could not complete a Psychiatric Review Technique due to insufficient evidence, but did

state that the anxiety and obsessive-compulsive disorder Plaintiff suffered from was severe. (Tr. 72-74.)

In February 2020, state agency physician Dr. Reynaldo Gotanco assessed plaintiff's RFC based on a review of the file materials and mostly agreed with Madala's findings. (Tr. 88-92.) Gotanco determined that Plaintiff could perform work at the light exertional level. Regarding psychiatric review, Dr. Michele Womontree found that Plaintiff's migraines and anxiety were non-severe, but found mild limits understanding, remembering, or applying information; interacting with others; with concentration, persistence, or pace; and adapting or managing. (Tr. 85-87).

## ANALYSIS

Plaintiff claimed she suffers from a variety of mental and physical ailments that, in conjunction, prevent her from being able to perform even sedentary work.

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. However, the scope is limited and review is deferential. Administrative error may be harmless and the Court will not remand a case to the ALJ for further specification where it is convinced that the ALJ will reach the same result. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). That said, there are errors in the ALJ's opinion, at least one of which may change the result.

Regarding back pain, in her opinion, the ALJ stated that "records indicate that the claimant's condition improved following surgery" after first noting that these records are from emergency room visits related to back pain. While those exams did note improvements in areas like gait, the Court is bewildered by the ALJ's

characterization when she used "severe back pain" a paragraph before to describe the impetus for the visit. In the Court's view, on the whole. this does not sound like much of an improvement and specificity appears lacking to clarify whether this is improvement overall, or improvement only in certain areas.

While characterization and semantics related to the interpretation of medical records may be considered harmless error, the ALJ's lackluster treatment of Plaintiff's migraines in terms of RFC certainly is not. The ALJ used Plaintiff's deficits, including non-exertional impairments, which are indeed serious, to come to a determination from his RFC that Plaintiff was limited to sedentary work.

In the world of disability claims, migraines are a challenging impairment. Objective verification can be difficult in these cases. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); *see also* SSR 19-4p, § 2. Thus, determining the nature and extent of a claimant's impairment rests heavily on an assessment of the claimant's subjective symptoms, including how her symptoms respond to treatment. *See Overton v. Saul*, 802 F. App'x 190, 192 (7th Cir. 2020). Migraines are also variable. At times, a claimant suffering from migraines may be symptom-free and unimpaired for some time, but if a claimant suffers migraines that are severe enough to force her to miss work, just two migraines a month, as the vocational expert in this case testified to, could be disabling. (Tr. 64.) For this reason, the ALJ usually should include the likelihood of missing work when determining the RFC of a claimant who suffers from migraines. *See Moore v. Colvin*, 743 F.3d 1118, 1126-1127 (7th Cir. 2014). The ALJ failed to do so here.

Furthermore, the ALJ's reasoning for her treatment of Plaintiff's migraines presents issues. When an ALJ accepts that a claimant's migraines are a severe impairment but concludes that she is not disabled, there are usually two possible explanations. Either the ALJ found that claimant's migraines did not occur at a disabling frequency, or the severity of migraines were not disabling and the claimant could work while suffering a migraine. The ALJ here stated:

> after careful consideration of the evidence, the undersigned finds that although the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 30.) With respect to Plaintiff's migraines, the ALJ said that the "claimant's functioning has been thoroughly evaluated, as reflected in the discussion of the evidence throughout this decision, but is not 'markedly' limited in any of the above areas due to the claimant's migraines." Conversely, Plaintiff described her pain as a 5/10 in severity, detailed the frequency as waxing and waning, and even described how one severe migraine while on the job affected her ability to keep that job. As a result, the ALJ's reasoning is insufficient to support her conclusion that Plaintiff's migraine symptoms are not as severe as she alleged when compared with the record and his RFC determination is lacking in limitations as a result, including in the areas of concentration, persistence, and pace.

This Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff was disabled during the relevant period, or that she should be awarded benefits. On the contrary, the Court has not formed any opinions

in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## CONCLUSION

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g). The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED:  December 21, 2022**

s/ <u><i>Stephen P. McGlynn</i></u><br>
**STEPHEN P. McGLYNN**<br>
**U.S. District Judge**